11b 241
96 405

11bu241
113 841
113 885

11bu 241
123 297

CASE 6—PETITION EQUITY—JUNE 26.

# Kennedy, &c. v. Ten Broeck, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. UNDUE INFLUENCE.—See the opinion for facts held insufficient evidence of undue influence or coercion on the part of the husband in procuring a conveyance of his wife's estate.
2. *An officer who took the acknowledgment of a wife to a deed will not be heard as a witness* to testify that the statements made in his certificate are untrue.
3. A POWER OF APPOINTMENT IN LANDS MAY BE VESTED IN A FEME COVERT by deed or will emanating from a third party.
    *But there is no rule* of law or equity which enables the wife, by her own deed or in conjunction with her husband, to vest herself with such a power in or over her general estate.
4. A FEME COVERT CAN ONLY DISPOSE OF HER LANDS IN THIS STATE IN THE MANNER POINTED OUT BY STATUTE; nor can the consent of the husband, by uniting with her in the deed, remove the disability or confer upon the wife any such right.
    The husband and wife can unite in a deed by which the title of the wife will pass.to a stranger, and this in fact is the ordinary and

VOL. XI.—17

only mode by which a *feme covert* can be divested of title. Such a deed may divest the wife of all rights, or may vest the title in trust to be held by the grantee for the use and benefit of the husband and wife, or either of them.

5. When freely and voluntarily made, a deed signed and acknowledged by the wife, with the husband united as grantor, will divest her of title as readily and for the same consideration that a conveyance would pass her title if signed and acknowledged by her when a *feme sole.*

6. T. and wife conveyed her property to B. in trust to hold, to secure him in any money he might loan T.; and if no such liability should be created, to hold in trust for T. and wife, or the survivor of them, and on the written request of them or the survivor to reconvey to them, or the survivor of them, in fee. Afterward, on the written request of T. and wife to convey to them and the survivor of them, B. reconveyed the property as directed.

*Held,* that the right to charge the estate was conferred by the deed on the trustee, and not on the wife; and the writing was simply a trust in B. to loan money if he saw proper, and hold the title for the benefit of the husband and wife. His failure to loan did not destroy the right of the beneficiaries, their rights having been already vested.

The stipulation in the deed that the trustee should reconvey to T. and wife on their written request can not be regarded as a power conferred on the wife by which she may divest herself of title, as this had already been done.

7. THE CHANCELLOR MAY ORDER A JURY TO AID HIM in finding on the facts; but it is a matter solely within his discretion.

D. M. RODMAN, . ... .     For Appellants Kennedy and wife,

JOHN MASON BROWN, . .     For Appellants Clark and wife,

CITED

MS. Opinion, 1873, Werne & Pope v. Heinsohn.
Constitution of Kentucky, art. 13, sec. 1.
Rule 10 Louisville Chancery Court.
General Statutes, chap. 23, sec. 25.
Knickerbocker's History of New York, 152.
Taylor on Evidence, sec. 129.
Civil Code, secs. 9, 13, 242, 243, 361, 343, 319, 404,
    519, 808.
Story's Equity, section 1018.
Revised Statutes, chap. 80, sec. 24.

Blackstone's Rep. 1249, Preston v. Merceau.
Bill of Rights, article 13, section 8.
2 Wall, 24, Drury v. Foster.
1 Redfield on Wills, 22.
7 B. Mon. 30, Winter v. Wheeler.
7 Bush, 156, Ford v. Teal.
7 Bush, 222, Woodhead v. Foulds.
4 Dana, 175, Wilhite v. Roberts.
8 B. Mon. 323, Burnside v. Wall.
8 Bush, 648, Sale v. Crutchfield.
7 Bush, 113, Harris v. Berry.
7 B. Mon. 553, Taylor v. Anderson.
1 Maddox, Chy. Pr. 512.
4 Johns. 212, Jackson v. Willard.
4 Kent. 136.   1 *Ibid.* (467) 517.
2 Sumner, 533.        20 Ohio, 464.
1 Washburn on Real Prop. 475, 543, 595.
1 Greenleaf on Ev., secs. 28, 436, 437, 451, 242, 449.
3 Greenleaf on Ev., secs. 7, 343, 266, 260, 339.
2 Vesey, jr., 675, Wright v. Rutter.
2 Sugden on Powers, page 94.
2 Met. 236, Smith v. Wilson.
2 Met. 506, Johnston v. Ferguson.
9 B. Mon. 540, Scarborough v. Watkins.
2 Atk. 324, Bennet v. Vade.
4 Cruise, p. 38, title 32, chap. 3; sec. 22.
2 Pr. Wms. 203, Clarkson v. Hanaway.
1 Vesey, 127, Peacock v. Monk.
2 White & Tudor's Leading Cases, page 54.
7 Mon. 293, Hutchison's adm'r v. Sinclair.
1 Peters, 340, Elliott v. Peirsol.
6 Bush, 550, McGuire v. Bowman.
1 Johns. Chy. 353, Wendell v. Van Rensallaer.
2 Schoale & Lefroy, 492.
1 Coke's Litt., side-page 132.
2 Vesey, jr., 675, Wright v. Rutter.
5 Henning's Statutes, page 408.
2 Littell's Laws, page 262, section 14.
4 Littell's Laws, pages 423, 438.
3 Mar. 10, Phillips and wife v. Green.
4 Mon. 245, Milner v. Turner.
5 J. J. Mar. 121, Prewit v. Graves.
3 Blackstone's Com. 49, note 20.
9 Vesey, 168, St. Paul v. Morris.

1 D. & R. 148, Rex v. Mayor, &c., of Hastings.

1 Vern. 152, Blackwell's case.

3 Atk. 164, Attorney General v. Lock.

5 Johns. Chy. 113, Newburg T. P. Co. v. Miller.

2 Chitty's R. 251, Rex v. Commissioners of Flockwood.

9 Port. 390, Simonton *ex parte.*

5 Cowan, 198, Malcolm v. Rogers.

9 Grat. 389, Bean v. Simmons.

7 Pick. 344, Charles River Bridge v. Warren Bridge.

9 New Hamp. 346, Marston v. Bracket.

2 Daniell's Chy. Prac. 1096.

8 Dana, 316, Singleton's will.

1 M. and K. 98, Greenough v. Gashell.

4 Parker, 176, People v. Blakely.

3 Wall, 192, Blackburne v. Crawfords.

8 Gray, 172, Mayhew v. Thayer.

18 B. Mon. 229, Clarke v. Seaton.

14 B. Mon. 415, Burgess v. Jacob.

15 B. Mon. 72, Smith v. Moberly.

15 Beavan, 246, Cooke v. Lemonte.

14 Ves. 273, Huguenin v. Basely.

10 Beavan, 51, Russell v. Sprye.

11 Beavan, 618, Russell v. Sprye.

12 How. 122, Walsingham v. Goodrich.

12 B. Mon. 115, Hughes v. Hughes.

11 B. Mon. 261, Berry v. Williamson.

13 Johns. 537, Jackson v. Delancy.

12 Peters, 365, Hepburn v. Dubois.

18 B. Mon. 866, Todd v. Wickliffe.

11 Wheaton, 214, Hinde's lessee v. Longworth.

15 B. Mon. 116, Hedger v. Ward.

BARNETT, EDWARDS & HARDING,⎫
BODLEY & SIMRALL, . . . . . ⎬ . . . For Appellees,
BARNETT & NOBLE, . . . . . ⎭

CITED

Jarman's Rules, 24, 16, 23.

Dwarris on Statutes, page 145.

Johns. Eng. Chy. 276, Barnard v. Minshall.

Revised Statutes, chap. 24, sec. 22.

8 B. Mon. 601, Stephen v. Walker.

9 Dana, 41, King v. Bullock.

8 B. Mon. 348, Singleton's will.

1 Mon. 25, Chinn v. Respass.

7 Bush, 368, Stewart v. Barrow.

3 Bush, 623, Stewart v. Brady.

2 Williams on Executors, page 796.

1 Redfield on Wills, pp. 16, 432, 433, 471 sec. 35, 493.

2 Redfield on Wills, p. 116, and note 32.

1 Kent, 162.         3 Russ, 565.

1 Mar. 217, Baird v. Rowan.

2 Met. 129, Wren v. Hynes.

3 J. J. Mar. 321, Berry v. Headington.

2 B. Mon. 462, Pattie v. Hall.

3 Barb. Chy. 466, Cronner v. Pinckney.

3 Mon. 279, Adie v. Cornwall.

5 Dana, 431, Birney v. Richardson.

9 B. Mon. 542, Scarborough v. Watkins.

6 J. J. Mar. 532, Barnett v. Shackleford.

1 Morehead & Brown's Statutes, 429, 454.

7 Bush, 156, Ford v. Teal.

7 Bush, 222, Woodhead v. Foulds.

10 B. Mon. 474, Tibbatts v. Berry.

12 B. Mon. 642, Carroll v. Carroll.

12 B. Mon. 46, Webb v. Webb.

12 B. Mon. 115, Hughes v. Hughes.

18 B. Mon. 866, Todd's heirs v. Wickliffe.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

On the 2d of January, in the year 1872, R. Ten Broeck and his wife, Patty D. Ten Broeck, executed a conveyance of certain real and personal estate to John G. Barret and Barack G. Thomas (or to the one accepting the trust), in trust for the uses and purposes mentioned in the deed. The property sold and conveyed was "all the undivided interest, right, and title of the parties of the first part, and of either of them, in the property, real, personal, and mixed, belonging to the estate of J. L. Martin, deceased, who was the grandfather of Patty D. Ten Broeck, including the interest of said parties in said estate, whether as devisee under the will of J. L. Martin, distributee, heir at law, or otherwise, consisting of real estate in the states of Kentucky, Mississippi, Indiana, or elsewhere, and money and stocks and other property in the hands of W. Geo. Ander-

son, an executor of said will, to have and to hold unto the parties of the second part, as of general warranty, in trust for the uses and purposes hereinafter directed and agreed on," viz.: The trustees are to hold the property to secure them in any moneys they may advance to the parties of the first part or become liable for on their account, as sureties or otherwise, not exceeding twenty-five thousand dollars; and if no such liability is created " the trustees are to hold the property in trust for the use and benefit of said first parties and the survivor of them, and at any time when there is no debt due or owing to said trustees by said parties, or either of them, and when they, the trustees, are not under liability of any kind for said parties, or either of them, then the trustees will, upon the written request of said first parties, or the survivor of them, reconvey to the parties of the first part, or the survivor of them, in fee simple, the property and the estate mentioned in the deed." It is also stipulated that if both the parties named as trustees fail to accept the trust, then the grantors reserve the right to appoint by like deed another trustee.

The deed was acknowledged in the city of New York before one Knaple, a commissioner of deeds for Kentucky, in the form and mode required by the statute of this state, and accepted by John G. Barret, one of the parties named as trustee, in the county of Jefferson, on the 22d of July, 1872. The conveyance, with the proper certificate of acknowledgment and acceptance by the trustee, was recorded in the clerk's office of the Jefferson County Court on the 31st of July, 1872. Ten Broeck and wife on the 20th of July, 1872, made the following request in writing of the trustee:

"JEFFERSON COUNTY, KY., July 20, 1872.

"MR. JOHN G. BARRET—*Dear Sir:* You are hereby requested to reconvey to us, and the survivor of us, all the property and estate conveyed to you in trust by our deed

acknowledged 2d January, 1872, as provided in the same, and oblige, etc.,                              " R. TEN BROECK,
                                             " P. D. TEN BROECK."

On the 22d of July, 1872, the same day on which he accepted the trust, Barret, the trustee, in accordance with the request, conveyed the property mentioned in the original deed of the 2d of January, 1872, to Ten Broeck and wife and the survivor.

Mrs. Ten Broeck having died not long after this deed was made, her heirs at law (the appellants) deny the right of the husband to any part of the estate by reason of the execution of that instrument.

At the time of the wife's death an action in equity was pending in the Louisville Chancery Court for a settlement of her grandfather's (Martin's) estate, and a division and distribution in accordance with the provisions of his will. That paper had been before this court for construction, and prior to her death it had been adjudged that she was the owner in fee of an undivided interest in her grandfather's estate; therefore if the conveyance by Barret passed to the husband and wife and the survivor the legal title to the wife's interest, the appellee, his wife having died, is now vested with the absolute title.

After the death of his wife the appellee, Ten Broeck, filed his answer and cross-petition in the action then pending for a settlement of Martin's estate, claiming to be the owner in fee-simple of his wife's interest in that estate by virtue of the deed from Barret, the trustee.

Appellants seek to cancel the deed from Ten Broeck and wife of the 2d of January, 1872, by which Barret was vested with title on the following grounds: 1st, for want of a proper acknowledgment by the wife; 2d, want of consideration; 3d, the exercise of an undue influence over the wife by the husband in obtaining its execution.

It is also insisted that the deed, if intended to be a mort-gage, divested the wife of no greater right or title to the estate than might be sufficient to discharge any liability incurred by the trustee; and further, that the reservation in the deed of a power on the part of the wife to direct a subsequent convey-ance is void, a *feme covert* having no power to clothe herself by her own deed with a right the law disables her from exer-cising.

A large mass of testimony accompanies the record, the most of it incompetent and irrelevant to the issues made, but enough is to be found in the case to dispose of it on the merits with-out determining the questions arising on the exceptions; nor would a decision of these minor questions alter or affect in any way the substantial rights of the parties. The testimony dis-closes the fact that the wife of the appellee was a woman of strong natural intellect, with superior educational accomplish-ments, and in every way competent to understand the nature and character of the writing she had executed. It is true she was suffering from a painful disease at the time the transaction took place, but all the witnesses, without an exception, who speak of her condition at or about the date of the deed, testify that her mental faculties were unimpaired, and there can be no question but that she was in a condition to understand fully the purposes for which the writing was executed.

The appellee and his wife, at the time of their marriage, were each possessed of a large estate, and, having no children, seem to have been so lavish in the expenditure of their for-tunes that at the time of the wife's death, and shortly before, the husband's pecuniary condition required him to create en-cumbrances upon both their estates to secure the payment of a large indebtedness. The evidence conduces to show that the husband was desirous of having the conveyance made in order that he might become the owner of the wife's estate in the event he survived her, and the circumstances surrounding

the wife connected with her own action indicate her desire to gratify his wishes.

As early as the year 1857 she had executed to her husband a power of attorney to sell and dispose of all her estate, and although such a power was void in Kentucky it evinced a willingness on the part of the wife to place her whole estate under his control. She united with the husband, after the execution of the deed, in the execution of a mortgage upon her estate to relieve him from his financial trouble, and, not only so, made or attempted to execute a will giving to the husband the whole of her estate. She signed and acknowledged the deed in controversy, and affixed her signature to the request upon Barret to convey her estate to herself and husband and the survivor. Before and after the execution of these writings she was in constant association with her friends and relatives, and if she desired to resist the importunities of her husband (if any were made), in order to obtain her estate, there was every opportunity presented for making her condition known with reference to her property, and to enable her to avoid making a disposition of it contrary to her own wishes.

That the husband and perhaps the wife concealed from her kindred the execution of the deed to Barret, may be inferred from the proof; and this to some extent, no doubt, caused a suspicion on the part of her kindred that the writing had been improperly obtained. This may have been done to avoid any unpleasant relations between the wife and her relatives by reason of this deed; but whether so or not, in the absence of any fraud practiced on the wife or the exercise of any improper influence operating upon her mind at the time she executed the paper, the legitimate conclusion is that it was her fixed and settled purpose to give to her husband the whole of her estate. A woman of her intelligence must have known that her husband would be left penniless unless some provision was made for him out of her estate; nor was it unnatural for the wife to

make the husband the object of her bounty, and particularly when her next of kin were already the owners and in the enjoyment of large estates.

There is nothing in the record showing the exercise of any improper influence by the appellee over his wife at the time or before the deed was made, or that his general conduct toward her had been of such a character as would preclude her from resisting such an influence if attempted to be exercised. The facts presented by the defense, that Barret had never been consulted by the wife, or that Thomas had not been asked to accept the trust until after the deed was executed, or the wife's silence in regard to the transaction, do not authorize the conclusion that the husband practiced a fraud on the wife. The wife had for so long a time and in so many modes indicated her purpose to vest the husband with the absolute right to her estate as to negative the presumption that the deed to Barret was the result of either coercion or undue influence.

In the case of Todd's heirs v. Wickliffe (18 B. Mon. 908), where there was a similar conveyance, this court said: "The conveyance is *prima facie* fair, and the burden of proof is on the party insisting that the conveyance is fraudulent."

An attempt has been made to show by the officer taking the acknowledgment of the wife that the statements contained in his certificate are not true. *Ex parte* statements made and signed by him in the form of affidavits have been taken by both parties to this controversy—one for the purpose of contradicting the statements of his certificate, and the other to sustain his official action. He will not be allowed to stultify himself in this manner, and his official certificate as to his action in the premises must be taken as true.

Having disposed of the questions arising upon the issues of fact made in the case, it becomes necessary to determine what powers were conferred upon the wife by the deed to Barret, as well as the rights acquired by the husband and wife under it.

There can be no question but that a *feme covert* can be invested, by deed or will emanating from a third party, with a power of appointment in lands; still, as long as she is under the disability of coverture there is no rule of law or equity enabling the wife, by her own deed or in conjunction with her husband, to vest herself with such a power in or over her general estate. A *feme covert* can only dispose of her lands in this state in the manner pointed out by the statute, nor can the consent of the husband by uniting with her in the deed remove the disability or confer upon the wife the power to dispose of her property in any other way. The husband and wife can unite in a deed by which the title of the wife will pass to a third party; and this, in fact, is the ordinary and only mode by which the *feme covert* can be divested of title. Such a deed may divest the wife of all right, or may vest the title in trust to be held by the grantee, for the use and benefit of the husband and wife, or either of them; nor do we understand counsel for appellant as controverting these legal propositions.

In the case now under consideration the wife was the owner in fee-simple of the property conveyed to Barret. By the conveyance the legal title passed to him as trustee, to be held for the use and benefit of the husband and wife and the survivor, with the power to charge the estate with a *sum of money to be raised by a loan or otherwise,* for the use of the beneficiaries, an amount not to exceed $25,000. After the payment of this money, or in the absence of the creation of any such liability, the trustees "*held the property herein and hereby conveyed for the use and benefit of said first parties and the survivor of them.*"

The right to charge the estate and the exercise of the power in this regard was conferred upon the trustee and not the married woman, and the writing is simply a trust in Barret to raise money and hold the title for the benefit of the husband and wife. It was not even made obligatory on the trustee to

loan or borrow money on the faith of the estate or to assume any individual liability for the parties unless he saw proper; the failure of the trustee, however, to loan the money or to charge the estate for that purpose did not destroy the rights of the beneficiaries, as their rights had already vested and were not made to depend upon any such contingency. If the trustee had declined to charge the estate, or had died without executing the trust, a court of equity would have caused its execution and had the title conveyed to the parties, as provided by the instrument creating it; or if the parties beneficially interested had failed to demand the title, the manner of the holding by the trustee would not be affected by it.

The stipulation contained in the deed requiring the trustee to convey the legal title to Ten Broeck and wife upon the written request of the parties or the survivor can not be regarded as a power conferred upon the wife by which she is divesting herself of title. This had already been done by the execution of the deed to the trustee; and if this provision had been omitted from the deed, the trustee, having incurred no liability for the parties, they were entitled to a reconveyance upon either a verbal or written request. If the wife had died without making the request, the appellee, as the survivor, would have been entitled to the conveyance, and the request by the wife, instead of divesting her of title, when complied with by the trustee, vested her with a title that she had already parted with in a legitimate mode. The wife had no choice either in the selection of the parties to whom the trustee should convey or the extent and character of the estate to pass by the conveyance, and the only right she could exercise was to demand that the trustee should execute the trust.

This part of the instrument could have been inserted for no other purpose than to show that the trustee was only compelled to convey when a written request was made, and to evidence the fact that the wife when she executed the deed was parting

with the legal title for the purposes contemplated by the husband and wife. The case of Scarborough against Watkins and wife, reported in 9 B. Monroe, is similar in many of its features to the case before us. The deed in that case recited as the only consideration that the wife was desirous of vesting the title to all of her estate, legal and equitable, in the husband, and in order to do so had, in conjunction with her husband, conveyed her lands to S. M. Wing "with the intent and object that he may and shall reconvey the same to her husband, George Scarborough, in fee-simple. Wing, upon the execution of the deed, conveyed the land to the husband. The wife dying, her heirs at law resisted the claim of the husband to the land conveyed by Wing." The court adjudged that as the deed had been acknowledged by the wife as required by the statute it was as effectual for every purpose as if she had been an unmarried woman. "These statutes are sufficiently comprehensive to empower a married woman to make a deed of any description; not merely a deed founded on a valuable consideration, but a deed of gift, mortgage, or release." It is evident that the object of the conveyance was to vest the husband with the title to the wife's estate in the event he survived her. The power on the part of the trustee to raise the twenty-five thousand dollars, charging the property with its payment, was for the benefit of the husband as well as the wife, and the existence of the marital relation with the object the parties had in view appearing on the face of the deed constituted a sufficient consideration to uphold it. The consideration of one dollar in hand paid as recited in the deed would have passed Mrs. Ten Broeck's title if she had been a *feme sole,* and the fact that she was a married woman at the time does not prevent her title from passing for a like consideration, provided the deed is acknowledged by her as required by the statute. When freely and voluntarily made, the deed signed and acknowledged by the wife, with the husband united as a grantor, will divest

her of title as readily and for the same consideration that a conveyance would pass her title if signed and acknowledged by her when a *feme sole*.

The motion by the appellants in the court below to have a jury impaneled to try the issue of fact having been overruled constitutes no ground for reversal in this court. The case was pending in the chancery court, and had been prepared for trial as is usual in equity cases. That court had the jurisdiction to determine the rights of the parties; and while the chancellor might have ordered a jury to aid him in a finding on the facts, it was a matter solely within his discretion. If a case is improperly in that court, the motion should be to transfer it to the court having jurisdiction. Other questions have been made which are not necessary to be considered.

Judgment affirmed.